## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYLER DEVECCHIS, MAIN STREET PRODUCTIONS, LLC, and JOHN J. O'NEIL, JR., *Chapter 7 Trustee on Behalf of Bankruptcy Estate of In re Tyler J. DeVecchis, Debtor, Chapter 7, Case No. 11-22438 (ASD)*,  Plaintiffs,  v.  SEBASTIAN J. SCALORA, JERRY FARRELL, JR., SEBASTIAN N. GIULIANO, PATRICK T. MCMAHON, GREGORY B. SNEED, WILLIAM WARNER, BRUCE E. DRISKA, and CITY OF MIDDLETOWN,  Defendants. | No. 3:12-cv-01575 (JAM) |

## RULING RE MOTION TO DISMISS
## BY DEFENDANT JERRY FARRELL, JR.

This case is about an alleged "political war" between former bar-owner Tyler DeVecchis, his erstwhile business partner Sebastian Scalora, and the City of Middletown and its officials, all of which ultimately resulted in DeVecchis closing his bar and filing for bankruptcy. He, his company, and the bankruptcy trustee have filed this lawsuit against Scalora, the City of Middletown, and several city officials for their role in his bar's demise. An additional defendant is Jerry Farrell, Jr., who was the Commissioner of the Connecticut Department of Consumer Protection and Chairman of the department's Liquor Control Commission. Farrell now moves to dismiss the claims against him. For the reasons below, his motion is granted.

BACKGROUND[1]

In July 2008, plaintiffs Tyler DeVecchis and Main Street Productions, LLC opened the Public Bar and Grill ("the Public") in Middletown, Connecticut. The establishment grew popular, and plaintiffs decided to expand its seating capacity by adding a lounge. Their informal business partner, defendant Sebastian Scalora, was tasked with arranging any necessary permits and ensuring compliance with local regulations. Scalora had previously worked with the mayor, Sebastian Giuliano; he allegedly assured plaintiffs that he could pull a few strings to get the necessary permits to construct the Public's new lounge.

According to plaintiffs, this is when things got dicey. Defendants William Warner and Bruce Driska allegedly resented Scalora's "arrogance." Doc. #110 at 5. The Middletown Planning and Zoning Commission had a fraught history with Scalora, who had previously used his connection to Mayor Giuliano to "pull rank" over the Planning and Zoning Commission. *Ibid.* Warner, Driska, and the Planning and Zoning Commission allegedly worked together to undermine plaintiffs' business.

In November 2009, Scalora engaged someone to construct the new lounge and helped plaintiffs procure loans to finance the construction. He represented that the permits and necessary zoning approvals were in place. Plaintiffs had the lounge constructed and opened the new-and-improved Public the day before Thanksgiving of that year. Present at the opening were the Middletown Health Inspector and employees of the Planning and Zoning Commission. Apparently, however, the lounge had not been fully approved by the Planning and Zoning Commission, and the city issued plaintiffs a cease-and-desist order.

---

[1] For purposes of the motion to dismiss, the facts below are assumed to be true as alleged in plaintiffs' fifth amended complaint and its attached exhibits. Docs. #109 & #110. The complaint also attaches numerous exhibits that may be considered in deciding this motion to dismiss. *See, e.g., Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Several months later, in February 2010, the Planning and Zoning Commission retroactively approved the expansion. The city appealed, and more trouble ensued. Eventually, in April 2010, plaintiffs transferred the lease to the bar's property and sold their assets. Scalora, who was an attorney, represented plaintiffs in this transaction as well. In August 2011, plaintiff DeVecchis filed for bankruptcy, allegedly due to the debts he had accrued from the closing of the Public.

Plaintiffs believe that Scalora acted unethically throughout his business relationship with them, and that the other defendants targeted the Public with unequal enforcement of the laws to drive plaintiffs out of business in Middletown. The fifth amended complaint provides several examples of incidents that plaintiffs believe evidence this disparate treatment. One of those pertains to defendant Jerry Farrell, Jr., who was then the Commissioner of the Department of Consumer Protection and served as chairman of the state's Liquor Control Commission.

On December 27, 2009, Middletown police "stormed" the Public, "complete with K-9s." Doc. #110 at 9. The police report of the incident indicates "overcrowding" at the Public that night and refers to a gang-related fight and other disruptive behavior toward the police, who helped bar staff escort the large crowd out of the bar. The reporting officer advised that he would be referring the bar to the Connecticut Liquor Control Commission "due to the overcrowding, disturbances and unruly intoxicated patrons outside on the sidewalk of Main Street once the bar closed." Doc. #109-4 at 5.

Defendant Gregory Sneed—the Acting Deputy Police Chief of the City of Middletown— wrote to Farrell the morning of December 31, describing the incident a few days prior and attaching the police report (both the letter and the police report are exhibits to plaintiffs' complaint). In addition to describing the overcrowding and disturbance created by gang

members, the letter stated that all available police personnel were called to the scene of that disturbance, and that this "left the remainder of the city unprotected during this time and compromises our public safety efforts." Doc. #109-4 at 2. The letter also stated that over the previous year and a half, the Middletown Police Department had responded to approximately 80 calls for service at the Public.

As a result of this letter, the Liquor Control Commission summarily suspended the Public's liquor permit shortly before the Public was prepared to open for New Year's Eve. In order to reopen the Public and have the liquor permit reinstated in mid-January 2010, plaintiffs were required to hire two off-duty police officers for security on Friday and Saturday nights and to screen patrons with wand metal detectors.

Plaintiffs brought suit against all the defendants in this case under 42 U.S.C. § 1983 for violations of their Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection, as well as for the intentional infliction of emotional distress. They raised additional claims against Scalora for misrepresentation and tortious interference with business relationships.

Farrell filed a motion to dismiss the claims against him in the fifth amended complaint. Doc. #108. The Court granted the motion as to Count One (procedural due process), and denied the remainder without prejudice to renewal. Doc. #129. Plaintiffs move for reconsideration of that ruling, Doc. #133, and Farrell moves to dismiss the other claims against him—Count Two (substantive due process and equal protection) and Count Three (intentional infliction of emotional distress). Doc. #147. For the reasons set forth below, plaintiffs' motion for reconsideration is denied, and Farrell's motion to dismiss is granted. All claims against him are hereby dismissed.

**DISCUSSION**

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). The Supreme Court has elaborated on the "plausibility" standard for evaluating a motion to dismiss:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted). Moreover, beyond the plausibility requirement, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (internal quotation marks omitted). In short, my role in reviewing a motion to dismiss is to determine whether the complaint—apart from any of its conclusory allegations—sets forth sufficient facts to state a plausible claim for relief.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has recently explained that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."

5

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083–84 (2011)). In this manner, "[q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft*, 131 S. Ct. at 2085).

Moreover, the defense of qualified immunity may properly be raised at the pre-discovery, motion-to-dismiss stage, because "[q]ualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Indeed, "[t]he 'driving force' behind creation of the qualified immunity doctrine [is] a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery.'" *Id.* at 706 (quoting *Pearson*, 555 U.S. at 231).

### *Procedural and Substantive Due Process*

Farrell is entitled to qualified immunity as to plaintiffs' procedural due process claim. While it is true that a liquor permit may not ordinarily be suspended without prior notice and an opportunity for a hearing, the Connecticut Liquor Control Act provides the Commissioner the authority to summarily suspend a liquor permit without prior notice or hearing "[i]f the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order." Conn. Gen. Stat. § 4-182(c). So far as the complaint alleges, Farrell relied on the only information he was given—the letter from Sneed and the attached police incident report—and concluded that public safety required emergency action in the form of the immediate suspension of the Public's permit. His summary suspension order incorporated that conclusion and further stated that an incident like the December 27 disturbance "imperils public safety and demonstrates the need for better control of the premises."

6

Doc. #109-8 at 2.

The complaint alleges that "[e]mail communications among the defendants from December 27, 2009 through mid-January 2010 evidences [sic] without question that plaintiffs Devecchis and the LLC were maliciously and irrationally targeted and the defendants 'were out to get him' – plaintiffs Devecchis and the LLC. (Email communications attached hereto as Ex. 2)." Doc. #110 at 9. But a review of the attached emails reflects nothing to suggest that Farrell personally was "out to get" plaintiffs or harbored any improper motives or reasons for carrying out his duties. Doc. #109-3 at 2–4. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (*per curiam*) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

It was objectively reasonable for Farrell to rely on the information provided to him by the Middletown Police Department and to conclude that there was an emergency—not only the public safety threat that had occurred on December 27, but also the likelihood of a future such threat, given what he had been told about the frequency of police calls to the Public. He violated no clearly established law when he utilized his authority under state law to suspend the Public's liquor permit upon that conclusion. Whether or not his conclusion was ultimately the correct one, his actions did not constitute the sort of "plainly incompetent" or intentionally unlawful official behavior for which qualified immunity would be inappropriate. *See Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (*per curiam*). I therefore deny plaintiffs' motion for reconsideration of the order dismissing the claim against Farrell for violation of plaintiffs' right to procedural due process.[2]

---

[2] This ruling is on the merits of plaintiffs' failure to state a claim against Farrell for violation of their constitutional right to procedural due process. Additionally, plaintiffs have failed to provide information sufficient to

I further conclude that plaintiffs have failed to state a plausible claim that Farrell violated their rights to substantive due process. A claim against Farrell under the doctrine of substantive due process requires an allegation that he deprived plaintiffs of a fundamental constitutional right, and that he did so under circumstances that were no less than "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *See United States v. Medunjanin*, 752 F.3d 576, 590 (2d Cir. 2014) (substantive due process has generally protected "'matters relating to marriage, family, procreation, and the right to bodily integrity'" (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality opinion)); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir. 1999) (substantive due process standards violated "only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority"); *Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir. 2005) (describing the "shocks the conscience" standard).

Plaintiffs have made no allegation that Farrell's actions—his summary suspension of the Public's liquor permit—breached any right other than their alleged right to a pre-deprivation hearing, which would fall under the heading of procedural due process. Nor have they alleged any facts that would indicate that Farrell's conduct in reliance on the information received from the Middletown police department was arbitrary, outrageous, or conscious-shocking in the constitutional sense. Instead, plaintiffs complain that "Farrell was duped and did not even make one phone call to confirm the so-called emergency pressed upon him in bad faith by the Middletown Police Department." Doc. #156 at 11. Because plaintiffs have failed to allege facts

---

satisfy the stringent standards for granting a motion for reconsideration. "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Young v. Choinski*, 15 F. Supp. 3d 194, 196 (D. Conn. 2014) (quoting *Shrader v .CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Plaintiffs provide no new factual evidence, and their notices of additional authority provide no controlling law that is inconsistent with the Court's original and continued finding that Farrell is entitled to qualified immunity as to the procedural due process claim.

that state a plausible violation by Farrell of a substantive due process right, I need not consider whether the specific right in question was clearly established for purposes of qualified immunity. Plaintiffs' substantive due process claim against Farrell is dismissed.

### Equal Protection

As for the claims of selective enforcement and "class of one" discrimination, these theories are closely related, though analytically distinct in this Circuit. Both rely on the Equal Protection Clause of the Fourteenth Amendment, which "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To prevail on their claim of selective enforcement, plaintiffs must allege (1) that they were "treated differently from other similarly situated individuals," and (2) that "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [them]." *United States v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009) (internal citation and quotation marks omitted).

The complaint does not allege that Farrell targeted plaintiffs for reasons of race or religion or to inhibit and punish their exercise of a constitutional right. Nor does the complaint contain any plausible allegations that Farrell had malice or ill will toward plaintiffs. On the contrary, it states that the defendants, other than Scalora, "barely even kn[ew] who the plaintiff was." Doc. #110 at 5. There is simply no basis within the complaint to conclude that Farrell singled out plaintiffs with intent to hurt them. Therefore, plaintiffs have not stated a plausible claim of selective enforcement in violation of the Equal Protection Clause.

To state a class-of-one claim, plaintiffs must allege that they have been "'intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*)).[3]

Plaintiffs must establish an extremely high degree of similarity between themselves and would-be comparators, such that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Id.* at 60 (internal quotation marks omitted).

Although the complaint identifies two other bars elsewhere in Connecticut that were subject to summary suspension of their liquor permits, Doc. #110 at 13–14, the fact that there may have been other bars that were subject to summary suspension does not suggest that the summary suspension in this case was improper. The complaint also names other establishments in Middletown, contending that they were not subject to the same "onerous" and "costly conditions" as imposed on the Public as a condition of its re-opening in mid-January 2010. *Id.* at 8–9. But the complaint does not specify whether those other establishments had previously been the subject of letters and police reports sent to Farrell with a call to take action. Nor does it specify what—if anything—Farrell was told about or did do with regard to those establishments.

Without more information about those establishments and about Farrell's actions toward them, plaintiffs have not pled facts that would plausibly show a class-of-one equal protection violation by Farrell. Because plaintiffs have failed to allege facts to establish a plausible right to relief under the Equal Protection clause, I need not consider whether the specific right in

---

[3] "The Supreme Court arguably added a third requirement to 'class of one' claims in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008): that the offending governmental action at issue be nondiscretionary." *Ruston*, 610 F.3d at 58 n.3. Plaintiffs' claim would fail under this requirement as well, as Conn. Gen. Stat. § 4-182(c) provides the Commissioner discretion to suspend a liquor permit under certain conditions.

question was clearly established for purposes of qualified immunity. Plaintiffs' equal protection claim against Farrell is therefore dismissed.

### *Intentional Infliction of Emotional Distress*

Finally, plaintiffs allege a claim against Farrell for intentional infliction of emotional distress. "In order to prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Gillians v. Vivanco-Small*, 128 Conn. App. 207, 211, 15 A.3d 1200 (2011) (internal citation and quotation marks omitted). Plaintiffs' claim fails at the first requirement: nothing in the complaint remotely suggests in anything but wholly conclusory terms that Farrell acted with the requisite intent to inflict emotional distress. Farrell "barely even kn[ew] who the plaintiff was." Doc. #110 at 5. This claim is simply not "plausible on its face." *See Iqbal*, 556 U.S. at 678. I therefore dismiss the claim of intentional infliction of emotional distress, with regard to Farrell.

### CONCLUSION

For the reasons above, plaintiffs' motion for reconsideration (Doc. #133) is DENIED, and defendant Farrell's motion to dismiss (Doc. #147) is GRANTED. All claims against Farrell are dismissed from the case.

It is so ordered.

Dated at Bridgeport this 29th day of January 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge