## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYLER DEVECCHIS ET AL, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO.: |
| | : | 3:12-cv-01575 (VAB) |
| v. | : | |
| | : | |
| SEBASTIAN J. SCALORA ET AL, | : | |
| | : | MARCH 31, 2016 |
| Defendants. | : | |

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

This case concerns events leading to the closing of Tyler DeVecchis's bar, and his filing for bankruptcy protection.  DeVecchis, his company, Main Street Productions, LLC, and the bankruptcy trustee, John J. O'Neil, Jr., (collectively, "Plaintiffs") filed this action against the City of Middletown ("Middletown" or the "City"), Sebastian N. Giuliano, Patrick T. McMahon, Gregory B. Sneed, William Warner, and Bruce E. Driska (collectively, the "Middletown Defendants"), as well as Jerry Farrell, Jr. and Sebastian Scalora.[1]  All remaining Defendants move for summary judgment as to all counts.

For the reasons stated herein, the Middletown Defendants' motion is GRANTED IN PART AND DENIED IN PART, and Sebastian Scalora's motion is FOUND AS MOOT.  The Court concludes that no genuine dispute of material fact exists with respect to Plaintiffs' claims arising under federal law, and declines to exercise supplemental jurisdiction over the remaining state law claims.

---

[1] The Court dismissed all claims against Jerry Farrell, Jr.  Ruling at 11, ECF No. 157.  The Court also granted judgment on the pleadings in the City's favor as to Plaintiffs' claims under 42 U.S.C. § 1983.  ECF No. 128; Defs.' Ex. JJ at 43-44.  The only remaining claim against the City is intentional infliction of emotional distress.  *See* Fifth Amend. Compl. ¶¶ 74-75.

## II.    FACTS[2]

On or about September 6, 2009, Chris Lieder applied to the Middletown Planning and Zoning Commission ("Zoning Commission") for a Special Exception to convert a building on Main Street in Middletown into a bar/restaurant.  Middletown Defs.' L.R. 56(a)1 Stmt. (ECF No. 163-2) and Pls.' L.R. 56(a)2 Stmt. (ECF No. 169-2) [hereinafter "Stmts."] ¶ 1.  As presented to the Commission, the initial concept for the establishment, then called Bungalow, was an upscale martini bar.  *Id.* ¶ 2.  On October 11, 2006, the Zoning Commission granted Lieder's application for a Special Exception to use the building as a nightclub (the "Original Special Exception").  *Id.* ¶ 3.  The Original Special Exception was subject to four conditions, one of which stated that, "[t]he Special Exception form filed on the land records shall reference the business plan and the discussions at the public hearing and require that any change in concept be approved as a new Special Exception by the Planning and Zoning Commission[.]"  *Id.* ¶ 5.

In 2008, DeVecchis became acquainted with Lieder, and they formed a business partnership to operate Bungalow, which later was renamed Public Bar & Grill ("Public").  *Id.* ¶ 6.  On or about June 11, 2007, DeVecchis and Lieder formed Main Street Productions, LLC

---

[2] The facts set forth herein are undisputed unless otherwise indicated.  The Court deemed admitted all properly-supported allegations in the Middletown Defendants' Local Rule 56(a)1 Statement (ECF No. 163-2) that were not denied in Plaintiffs' Local Rule 56(a)2 Statement (ECF No. 169-2) with specific citations to record evidence that actually contradicted the allegations.  *See* D. Conn. L. Civ. R. 56(a).  The Court disregarded Plaintiffs' "Statement of Material Facts in Dispute as to Middletown Defendants" (ECF No. 169-2 at 7-14) because none of the statements therein is followed by a specific citation to record evidence, and therefore the statement does not comply with Local Rule 56(a)3's requirement that "[e]ach statement of material fact . . . by an opponent in a Local Rule 56(a)2 Statement . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  D. Conn. L. Civ. R. 56(a)3 (failure to provide specific citations "may result in the Court deeming certain facts admitted in accordance with Local Rule 56(a)1 or in the Court imposing sanctions, including . . . when the opponent fails to comply, an order granting the motion [for summary judgment] if the undisputed facts show that the movant is entitled to judgment as a matter of law."); *cf. Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *Ryder v. Wash. Mut. Bank, F.A.*, 501 F. Supp. 2d 311, 314 (D. Conn. 2007) (court not required to "dig through a voluminous record, searching for material issues of fact without the aid of the parties") (internal quotation marks and citations omitted).  Over eleven months after Plaintiffs' Local Rule 56(a)2 Statements were due, they filed amended versions (ECF Nos. 218 and 220) to add record citations to their statements of disputed facts.  The Court disregarded these submissions as untimely.

("MSP") to operate Public.  *Id.* ¶ 7.  DeVecchis and Lieder were members of MSP.  *Id.* ¶ 8.
They credited Public's profits and losses to MSP, and paid employees from an account
maintained by MSP.  *Id.* ¶ 9.

Before opening Public for business, DeVecchis incurred substantial debt, including
approximately $100,000 from an individual lender, and approximately $350,000 from banks.  *Id.*
¶ 10.  DeVecchis's mother and brother borrowed a portion of the bank funds, and gave those
funds to DeVecchis for use in Public's business.  *Id.* ¶ 11.

From July 2008 until July 2009, Lieder liaised with Middletown officials regarding
permits, applications, and land use issues.  During this time, DeVecchis and Public experienced
no trouble with any Middletown official.  *Id.* ¶ 12.  On or about July 2, 2008, Lieder received a
letter stating that, on June 24, 2008, the Middletown Building Department had inspected Public's
premises and determined that it met all requirements of the Connecticut Building Code.  *Id.* ¶ 13.

On or about July 9, 2008, Public opened for business.  *Id.* ¶ 14.  DeVecchis's 2009 tax
return indicates that MSP posted a loss of $80,041.  *Id.* ¶ 16.  On or about May 2009, the
partnership between Lieder and DeVecchis broke down, and DeVecchis engaged an attorney to
dissolve the partnership.  *Id.* ¶ 17.  On or about June 2009, Lieder released his interest in MSP
and Public, leaving DeVecchis the sole member of MSP and sole owner of Public.  *Id.* ¶ 18.  At
that time, DeVecchis knew that Public owed delinquent taxes from 2008 and 2009.  *Id.* ¶ 19.

On or about October 20, 2009, a building permit application for interior renovations was
submitted to the Middletown Building Department.  Defs.' Ex. UU; Defs.' Ex. VV ¶ 6-7.  It
listed "Public" as the applicant, listed Public's address as the applicant's address, and listed
"tyles@publicct.com" as the applicant's e-mail address.[3]  *Id.*  DeVecchis attests that he did not
submit this application.  Pls.' Ex. 9 ¶ 9.

---

[3] DeVecchis used "tyler@publicct.com" as an e-mail address.  *See* Pls.' Ex. 19, Ex. C, ECF No. 188-4.

On or about November 2009, DeVecchis and an attorney, Sebastian Scalora, decided to construct a lounge on Public's premises (the "Lounge").  *See* Stmts. ¶ 20.[4]  Scalora was responsible for obtaining a building permit to construct the Lounge.  Scalora had a previous business relationship with Middletown's then mayor, Sebastian Giuliano ("Mayor Giuliano").  DeVecchis Dep. at 56; Stmts. ¶ 23.

Middletown's Chief Building Official, John C. Parker, Jr., sent DeVecchis a letter, dated November 3, 2009, stating that the building department could not issue the requested permit because municipal real estate taxes were delinquent for the property.  Stmts. ¶ 21; Defs.' Ex. L.  The letter advised DeVecchis to make arrangements with the tax collector to pay the outstanding taxes so that the building department could be in a position to issue the permit.  Defs.' Ex. L.  DeVecchis does not remember receiving this letter.  Pls.' Ex. 9 ¶ 10.

Parker sent DeVecchis another letter, dated March 3, 2010, informing him that, "as stated in two previous letters dated November 3, 2009 and February 19, 2010," the building department could not issue the requested permit because Public's delinquent taxes of $7,392.64 still had not been paid.  Defs.' Ex. KK.  The letter concluded, "[u]ntil these taxes are paid the renovated portion of the building performed under Permit #4739 can not [*sic*] be occupied.  I will post the rooms unsafe to occupy until the matter is resolved."  *Id.*

The Lounge opened for business on November 25, 2009.  *See* Stmts. ¶ 26.  On or about December 1, 2009, DeVecchis received a cease and desist order (the "Order") from Middletown's Zoning Enforcement Officer, Bruce Driska, instructing him to cease operation of the Lounge until Zoning Commission approval was obtained.  *Id.* ¶ 27; Defs.' Ex. M.  The Order

---

[4] Plaintiffs' denial of this allegation does not comply with Local Rule 56(a)3, which provides that "[t]he 'specific citation' obligation of this Local Rule requires counsel . . . to cite to specific paragraphs when citing affidavits . . . ." D. Conn. L. Civ. R. 56(a)3.  Plaintiffs' "passim" citation does not comply with the rule.  *See* Pls.' Stmt. ¶ 20.  As a result, the allegation is deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)3.

contained the conditions imposed on the Original Special Exception, and noted that it was Driska's understanding that DeVecchis had been advised to submit an application to the Zoning Commission.  Defs.' Ex. M.  DeVecchis attests that he did not see the Original Special Exception until sometime after he received the Order.  Pls.' Ex. 9 ¶¶ 3-5.

Almost immediately after receiving the Order, DeVecchis engaged another attorney, Ralph Wilson.  Stmts. ¶ 29.  In an e-mail dated December 1, 2009 and addressed to Attorney Wilson, William Warner, the Director of the Middletown Department of Planning, Development, and Conservation, wrote that DeVecchis had applied for a building permit that was never issued because of delinquent taxes, and that all of the construction done on the Lounge was done without a permit.  *Id.* ¶ 30; Defs.' Ex. N.[5]

Shortly after receiving the Order, DeVecchis attended a meeting at Mayor Giuliano's office.  DeVecchis, Mayor Giuliano, Attorney Wilson, Sebastian Scalora, William Warner, and Bruce Driska were present.  Stmts. ¶ 32.  The participants discussed the Order and explored ways to resolve the zoning issue.  *Id.* ¶ 33.[6]  DeVecchis attests that Mayor Giuliano yelled at him, and that William Warner stared at Sebastian Scalora "like he was going to kill him from across the table."  Pls.' Ex. 2 ¶¶ 7, 10.

On or about December 3, 2009, DeVecchis appealed the Order to the Zoning Board of Appeals.  Stmts. ¶ 31.  On or about December 9, 2009, Bruce Driska, Liquor Control Special

---

[5] Plaintiffs deny this assertion, but the evidence to which they cite does not controvert it.  *See* Pls.' Stmt. ¶ 30; Pls.' Ex. 9 ¶¶ 3-5.

[6] Plaintiffs' denial of this allegation fails to comply with the specific citation requirement of Local Rule 56(a)3 because it does not cite to specific paragraphs of the cited affidavit.  *See* Pls.' Stmt. ¶ 33.  As a result, the allegation is deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)3.  Moreover, DeVecchis confirmed at his deposition that "the big issue discussed at that meeting was that there was a cease & desist order issued" and that "the parties were trying to find a way to resolve those zoning issues[.]"  DeVecchis Dep. at 71.  "It is beyond cavil that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony.'"  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)).

Agent Jennifer Sturgeon ("Special Agent Sturgeon"), and Lieutenant Heather Desmond ("Lieutenant Desmond") of the Middletown Police Department met with DeVecchis regarding an application he submitted for a liquor permit for the Lounge. *Id.* ¶ 34. By letter dated December 11, 2009, Bruce Driska informed Special Agent Sturgeon that the fire marshal's office had determined that the Lounge presented no imminent peril to life or property, and the City would not seek an injunction, but instead would allow DeVecchis to operate the Lounge while the Order was appealed. *Id.* ¶ 35.

On or about December 24, 2009, DeVecchis submitted an application to the Zoning Commission for a modification of the original Special Exception that would authorize him to construct and operate the Lounge. *Id.* ¶ 36. As of December 2009, Public's receipts were down forty percent as compared to Public's first year of operation. *Id.* ¶ 37.

On or about December 27, 2009, Public hosted several events, including two birthday parties and a disc jockey from a local radio station. *Id.* ¶ 38.[7] Middletown police officer Frederick Dirga was working a private duty assignment at Public. *Id.* ¶ 39; Dirga Aff. ¶ 5.[8]

---

[7] Plaintiffs' denial of this allegation fails to comply with the specific citation requirement of Local Rule 56(a)3 because it does not cite to specific paragraphs of the cited affidavits. *See* Pls.' Stmt. ¶ 38. As a result, the allegation is deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3. While DeVecchis claims that a police report describing the events of November 27, 2009 at Public is "a complete fabrication and lie," Pls.' Stmt. ¶ 38, he cites an affidavit in which he attests, "[i]t is my belief that much of the information in the report is inaccurate, and likely fabricated." Pls.' Ex. 3 ¶ 4. DeVecchis's belief and speculation do not create genuine disputes of material fact. *See* Fed. R. Civ. P. 56(c)(4) (affidavit must be made on personal knowledge); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("The Rule's requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'"); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."). In any event, at his deposition, DeVecchis confirmed that Public hosted two birthday parties, a band, and a disc jockey from a local radio station. DeVecchis Dep. at 98:21-25. *See Bickerstaff*, 196 F.3d at 455.

[8] Plaintiffs' denial of this allegation fails to comply with the specific citation requirement of Local Rule 56(a)3 because it does not cite to specific paragraphs of the cited affidavits. *See* Pls.' Stmt. ¶ 39. As a result, the allegation is deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3. DeVecchis attests that he does not remember hiring a private duty officer for December 27, 2009, Pls.' Ex. 3 ¶ 12; he does not attest that no private duty officer was present at Public that day. Even if he did, that claim would not create a genuine dispute of material fact. *See Bickerstaff*, 196 F.3d at 455. At his deposition, DeVecchis did not dispute that a Middletown police officer was working at Public that day, and that it was his responsibility to make arrangements to hire private duty officers. DeVecchis Dep. at 95 ("There would be no one else at that time that would have done it besides myself."). He testified that he believed

Officer Dirga attempted to respond to two fights inside Public, but his response to each was delayed due to the number of people in the bar.  Stmts. ¶ 39; Dirga Aff. ¶ 7.  The second fight was near the restrooms.  Stmts. ¶ 40; Dirga Aff. ¶ 8.[9]  Officer Dirga observed bouncers attempting to gain control of the situation.  Stmts. ¶ 41; Dirga Aff. ¶ 10.  He radioed for back-up. Stmts. ¶ 42; Dirga Aff. ¶ 11.  The bouncers removed the agitators through the rear entrance, where police back-up had arrived.  Stmts. ¶ 43; Dirga Aff. ¶ 12.  DeVecchis was told that the fire marshal was going to be contacted to assess the occupancy level.  Stmts. ¶ 45; Dirga Aff. ¶ 16. At that time, DeVecchis told his staff that the bar was closing and asked the bouncers to escort patrons out.  Stmts. ¶ 46; Dirga Aff. ¶ 17.  The entire Middletown Police Department patrol shift responded to help disperse the crowd.  Stmts. ¶ 47; Dirga Aff. ¶ 21.[10]  This task was made difficult by the number of patrons, some of whom were intoxicated.  Stmts. ¶ 48; Dirga Aff. ¶¶ 18-19.  Responding police officers brought "K-9" dogs.  Pls.' Ex. 3 ¶ 10.  Responding police officers also prepared incident reports.  *See* Pls.' Ex. 5, Ex. A.

---

that December 27, 2009 was the first time he had hired a private duty officer.  *Id.* at 98.  He testified that the private duty officer who worked at Public on December 27, 2009 was a tall, Caucasian male, 42 to 45 years old, with dark hair.  He had a pleasant experience with him.  *Id.*

Plaintiffs also cite communications from Lieutenant Desmond, which responded to Plaintiffs' counsel's request for records of Middletown police officers on private duty for December 27 and 28, 2009, and which indicated that no private duty was scheduled for December 27.  Pls.' Stmt. ¶ 39; Pls.' Ex. 26.  However, Officer Dirga was scheduled for private duty on December 26, 2009, arrived at Public before midnight, and worked into the early morning hours of December 27.  Amend. Desmond Aff. ¶¶ 11-12, ECF No. 214-1.  As a result, his private duty shift was "booked" to December 26, *id.* ¶ 13, and the record of that shift, Defs.' Ex. WW, was not responsive to Plaintiffs' request for private duty records for December 27 and 28.  Officer Dirga's incident report is dated December 27, 2009 at "01:19."  Defs.' Ex. S.  It describes an altercation that took place at "0010 hours" and another that took place at "0032 hours[.]"  *Id.*

[9] This allegation is deemed admitted as a result of Plaintiffs' failure to comply with Local Rule 56(a)3's specific citation rule requiring citation to particular paragraphs within affidavits.  The Court hereinafter deems admitted all properly-supported allegations that Plaintiffs denied without satisfying the specific citation requirement.

[10] In addition to deeming this admitted as a result of Plaintiffs' failure to comply with Local Rule 56(a)3's specific citation requirement, the Court notes that the evidence to which Plaintiffs cite to dispute this allegation is DeVecchis's affidavit where he ponders, "How do you leave an entire town unattended by police?"  Pls.' Ex. 3 ¶ 31.

DeVecchis learned that the incident would be referred to the Liquor Control Division of the Department of Consumer Protection.  Stmts. ¶ 49; Dirga Aff. ¶ 21.  This type of referral is a standard practice of the Middletown Police Department.  Stmts. ¶ 49; Dirga Aff. ¶ 22.  From 2008 to 2011, the Middletown Police Department made approximately fifteen referrals to the Liquor Control Division, three of which involved Public.  Stmts. ¶ 50.  The December 27, 2009 referral was the last of the three referrals; the two prior referrals occurred on or about September 26, 2008 and October 4, 2009.  *Id.* ¶ 51.

On or about December 28, 2009, Gregory Sneed, Acting Deputy Chief of the Middletown Police Department, wrote a letter to the Commissioner of the Department of Consumer Protection, Jerry Farrell, Jr. ("DCP Commissioner Farrell"), informing him of the December 27 incident at Public.  The letter also noted that, "from June 26, 2008 through December 27, 2009, the Middletown Police Department has responded to approximately 80 calls for service at Public Bar and Grill[,]" and asked for DCP Commissioner Farrell's assistance in "addressing this public safety concern."  *See id.* ¶ 54; Defs.' Ex. U.  Plaintiffs submitted a document reflecting the calls for service, Pls.' Ex. 4, Ex. B, but DeVecchis attests that only 10 to 12 were "real calls."  Pls.' Ex. 4 ¶ 3.  The list speaks for itself and notes the reason for each call.  *See* Pls.' Ex. 4, Ex. B.

On the morning of December 31, 2009, copies of the police incident reports concerning the events of December 27, 2009 were faxed to Middletown Planning.  *See* Pls.' Ex. 5, Ex. A. Officers' names were redacted from the faxed reports.  *Id.*

On December 31, 2009, DCP Commissioner Farrell issued a Summary Suspension Order suspending Public's liquor permit.  Stmts. ¶ 55.  It noted that, "on December 27, 2009 at approximately 1:00am, Middletown Police officers responded to Public, a licensed liquor establishment, in response to a reported disturbance inside the permit premises."  Defs.' Ex. V.

It discussed the police response, found that the disturbance "imperils public safety and demonstrates the need for better control of the premises[,]" and concluded that "the Department of Consumer Protection finds that public health, safety and welfare imperatively requires emergency action.  In accordance with section 4-182(c) of the Connecticut General Statutes ORDERS [*sic*] your café liquor permit suspended immediately and premises closed pending proceedings for revocation or other action . . . ."  *Id.*

DeVecchis retained another attorney to represent him in connection with the liquor permit suspension.  Stmts. ¶ 56.  DeVecchis then met with Lieutenant Desmond to discuss an agreement under which the liquor permit suspension could be lifted.  *Id.* ¶ 57.  Sometime between December 31, 2009 and January 8, 2010, DeVecchis entered into an agreement that detailed the terms and conditions governing the lifting of the liquor permit suspension and Public's continued operation (the "Middletown Agreement").  *Id.* ¶ 58.  DeVecchis's attorney reviewed the Middletown Agreement, and neither he nor his attorney requested an amendment to any term or condition.  *Id.* ¶ 59; DeVecchis Dep. at 137-38.  DeVecchis testified that he felt that the terms were not negotiable.  *See* DeVecchis Dep. at 137-38.

On or about January 13, 2010, the Department of Consumer Protection, MSP, and DeVecchis entered into an agreement which resolved the liquor permit suspension (the "DCP Agreement").  The DCP Agreement appended the Middletown Agreement and stated that the suspension was lifted, effective January 15, 2010.  Stmts. ¶ 62.  DeVecchis knew that he was responsible for ensuring compliance with the terms and conditions of the Middletown and DCP Agreements.  *Id.* ¶ 63.

On or about January 22, 2010, Acting Chief of Police Patrick McMahon ("Chief McMahon") wrote a memorandum to the Zoning Commission in support of DeVecchis's

application for a modified Special Exception, requesting approval of the Lounge.  The
memorandum stated that, if Public adhered to the terms and conditions of the Middletown
Agreement, then Middletown police were "hopeful that there will be a reduction in public safety
related matters . . . [and] look[ing] forward to a successful collaborative relationship by all
business owners including the Public Bar and Grill."  *Id.* ¶ 65; Defs.' Ex. Z.

On January 26, 2010, Chief McMahon informed John Suchy of the Department of
Consumer Protection's Liquor Control Division that DeVecchis had made no attempt to hire
Middletown police officers for private duty on Friday, January 22, 2010, in violation of the
Middletown and DCP Agreements.  Stmts. ¶ 64.

On January 27, 2010, Bruce Driska, Middletown's Zoning Enforcement Officer,
informed DCP Commissioner Farrell about Public's failure to hire officers for January 22, 2010.
*Id.* ¶ 66.  DeVecchis was unaware of Driska's January 27, 2010 communication to DCP
Commissioner Farrell, he never was contacted by any Liquor Control Division personnel after
the liquor permit suspension was lifted, and Public's liquor permit was not suspended again after
execution of the Middletown and DCP Agreements.  *Id.* ¶ 67.

As of January 27, 2010, the Lounge remained an active zoning issue because the appeal
of the Order was pending before the Zoning Board of Appeals, and an application for
modification of the Original Special Exception was pending before the Zoning Commission.  *Id.*
¶ 68.  On or about February 4, 2010, the Zoning Board of Appeals upheld the Order.  *Id.* ¶ 69.
On or about February 24, 2010, the Zoning Commission granted Public a modification to the
original Special Exception to allow for operation of the Lounge.  *Id.* ¶ 70.

On or about March 8, 2010, Chief McMahon e-mailed John Suchy of the Liquor Control

Division stating that Lieutenant Desmond had inspected Public on or about March 5, 2010[11] and discovered that DeVecchis had failed to install surveillance cameras and post a sign notifying patrons of the dress code and video surveillance, as required by the Middletown Agreement.  *Id.* ¶ 73; Defs.' Ex. DD.  The e-mail also noted that DeVecchis was in arrears in the amount of $6,760.00 for private duty officers.  Chief McMahon requested that Public's liquor permit be suspended again.  Stmts. ¶ 74; Defs.' Ex. DD.

In April 2010, DeVecchis sold his interest in Public.  Stmts. ¶ 75.[12]  Public closed.  Pls.'s L. R. 56(a)2 Stmt. Re Scalora ¶ 17, ECF No. 169-3.  In 2010, DeVecchis's adjusted gross income indicated a $192,199 loss.  Stmts. ¶ 76.  DeVecchis filed for bankruptcy protection on August 17, 2011.  Pls.'s L. R. 56(a)2 Stmt. Re Scalora ¶ 18.

Driska never threatened or said anything offensive to DeVecchis.  Stmts. ¶ 77.  Chief McMahon never said anything threatening or offensive to DeVecchis.  *Id.* ¶ 78.  Deputy Chief Sneed never said anything threatening or offensive to DeVecchis.  *Id.* ¶ 79.  DeVecchis attests that Mayor Giuliano "went crazy" at a Zoning Commission meeting because the Zoning Commission sided with DeVecchis.  Pls.' Ex. 12 ¶ 16.

## III.    STANDARD OF REVIEW

The Court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he moving party bears the burden of showing that he or she is entitled to summary judgment. *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  Once

---

[11] DeVecchis attests that "[b]y March 8, 2010, the surveillance cameras were up – although the defendants complained it was not the way they wanted the cameras installed.  There was a sign up which said: 'Dress Code.'" Pl.'s Ex. 18 ¶ 10.

[12] This allegation is deemed admitted because Plaintiffs failed to deny it with a specific citation to particular paragraphs of the cited affidavit.  *See* Pls.' Stmt. ¶ 75; D. Conn. L. Civ. R. 56(a)3.  In any event, under the sham affidavit rule, nothing in the cited affidavit creates a genuine dispute as to this fact.  *See* DeVecchis Dep. at 201-02.

the moving party has satisfied that burden, in order to defeat the motion, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation[.]" *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). The nonmoving party "'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Id.* Disputes concerning immaterial facts do not prevent summary judgment. *See id.*; *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("[S]ummary judgment cannot be avoided by immaterial factual disputes."). When ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014).

## IV.    DISCUSSION

### A.    Procedural Due Process

Plaintiffs claim that they were deprived of property without procedural due process in violation of the Fourteenth Amendment when DeVecchis's liquor permit was suspended summarily on December 31, 2009.[13]

---

[13] Plaintiffs have not claimed a procedural due process violation on the basis of the Order. Even if they had, that claim would be abandoned, because the Middletown Defendants discussed procedural due process with respect to

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

"To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law."  *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  Furthermore, a defendant in a § 1983 action may not be held liable for damages absent personal involvement in the alleged constitutional deprivation. *Victory v. Pataki*, --- F.3d ----, No. 13-3592, 2016 WL 373869, at *13 (2d Cir. Feb. 1, 2016), *as amended*, (Feb. 24, 2016).

Assuming *arguendo* that DeVecchis's liquor permit was protected under the Fourteenth Amendment, and that he was deprived of that interest without constitutionally sufficient process, the Court concludes that Plaintiffs have failed to raise a genuine dispute of material fact as to whether the Middletown Defendants were personally involved in the alleged deprivation, and further concludes that the Middletown Defendants are entitled to qualified immunity.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  "Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by

---

the Order in their memorandum, Defs.' Mem. at 21-26, and Plaintiffs failed to respond in their opposition.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (partial opposition which argues that summary judgment should be denied as to some claims but fails to discuss others may result in abandonment).

one who knew of the facts rendering it illegal.'"  *Victory*, 2016 WL 373869, at *14 (quoting

*Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).  Liability may be found against

"a person who, with knowledge of the illegality, participates in bringing about a violation of the

victim's rights but does so in a manner that might be said to be 'indirect'—such as ordering or

helping others to do the unlawful acts, rather than doing them him—or herself."  *Provost*, 262

F.3d at 155.

DCP Commissioner Farrell suspended DeVecchis's liquor permit.  *See* Defs.' Ex. V.  He

relied, at least in part, on Acting Deputy Chief Gregory Sneed's December 28, 2009 letter

regarding the December 27, 2009 incident at Public, and, concluding that public health, safety,

and welfare required immediate action, exercised his authority to suspend DeVecchis's liquor

permit summarily.  *See* Stmts. ¶ 54; Defs.' Exs. U, V.  All claims against DCP Commissioner

Farrell have been dismissed, and therefore the question is not whether he was personally

involved in the deprivation, but whether any of the Middletown Defendants were.

Plaintiffs have not raised a genuine dispute as to whether any Middletown Defendant had

authority to suspend DeVecchis's liquor permit.  Nor have they raised a genuine dispute as to

whether any Middletown Defendant, other than Sneed, provided input as to DCP Commissioner

Farrell's decision.  With respect to Sneed, Plaintiffs have not raised a genuine dispute that he

knew of any illegality.  Sneed's letter merely describes the events of December 27, 2009, notes

that Middletown police responded to 80 calls for service at Public, and asks for DCP

Commissioner Farrell's "assistance in addressing this public safety concern."  Defs.' Ex. U.

Plaintiffs have failed to raise a genuine dispute as to whether the Middletown Defendants were

personally involved in the alleged deprivation.  *See, e.g.*, *Ace Partners, LLC v. Town of E.*

*Hartford*, No. 3:09-cv-01282 (RNC), 2011 WL 4572109, at *6 (D. Conn. Sept. 30, 2011)

(deputy chief of police who informed chief of police that pawn shop employees had been arrested was not personally involved in denial of pawn shop's license applications because deputy chief did not decide to deny plaintiff's applications – chief made that decision alone); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 138 (D. Conn. 2011) (safety officials were not personally involved in claimed deprivation relating to appeals process because state statutes vested sole control and authority over appeals process in permit examiners, not safety officials).

Plaintiffs claim that the Middletown Defendants conspired, as part of a "political war," to "stage" a police raid at Public on December 27, 2009, fabricated evidence, including the police reports,[14] and thereby proximately caused the alleged deprivation.  *See* Pls.' Mem. at 22-25.  The Court concludes that Plaintiffs have produced nothing beyond conclusory allegations, speculation, and conjecture to support their theories of conspiracy, malice, and improper political influence, and therefore have failed to raise a genuine dispute.  *E.g.*, Pls.' Ex. 5.

Plaintiffs also claim that the Middletown Defendants violated DeVecchis's due process rights through systematic and intentional harassment by issuing the Order, responding to the events of December 27, 2009, suspending DeVecchis's liquor permit, and entering into an agreement imposing conditions under which the suspension would be lifted.  *See* Pls.' Mem. at 25-26.  The Court concludes that Plaintiffs have not produced admissible evidence from which a reasonable jury could infer that these actions, to the extent attributable to the Middletown

---

[14] Plaintiffs have not raised a genuine dispute of material fact as to whether the police reports were fabricated. Plaintiffs disagree with a report's estimation of how many people were at Public on December 27, 2009.  *See* Pls.' Ex. 3 ¶ 7; Defs.' Ex. S.  They claim that no gang members were present, but a report merely notes that a witness told an officer that gang members were present.  *See* Pls.' Ex. 3 ¶ 8; Defs.' Ex. S.  The fact that the police reports were faxed to Middletown Planning on December 31, 2009, the day that DCP Commissioner Farrell suspended DeVecchis's liquor permit on the basis of the events of December 27, 2009, which are summarized in the police reports, and a day on which DeVecchis's appeal to the Zoning Board of Appeals and his application for a modified special exception were still pending, *see* Stmts. ¶¶ 31, 36, 68, does not create a genuine dispute as to whether the report was fabricated or the police response was staged, and is not probative of any alleged conspiracy.  Speculative and conclusory statements in DeVecchis's affidavits do not create a genuine dispute with respect to these issues. *See Salvino, Inc.*, 542 F.3d at 310.  Fabrication of the police reports and "staging" of the police response are not reasonable inferences to be drawn from the record evidence.

Defendants, constituted systematic and intentional harassment rising to the level of a constitutional violation. *See Chalfy v. Turoff*, 804 F.2d 20, 22-23 (2d Cir. 1986).

Finally, the Middletown Defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, state actors are entitled to judgment in their favor on constitutional claims if they did not violate clearly-established rights about which a reasonable official would have known. *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). If a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity. *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).

This Court previously held that DCP Commissioner Farrell was entitled to qualified immunity as to Plaintiffs' procedural due process claim because he "relied on the only information he was given – the letter from Sneed and the attached police incident report – and concluded that public safety required emergency action in the form of the immediate suspension of the Public's permit. . . . It was objectively reasonable for Farrell to rely on the information provided to him by the Middletown Police Department and to conclude that there was an emergency . . . . He violated no clearly established law when he utilized his authority under state law to suspend the Public's liquor permit upon that conclusion." Ruling at 6-7, ECF No. 157.

Similarly, Sneed, who was Acting Deputy Chief of the Middletown Police Department, violated no clearly established law when he reported to DCP Commissioner Farrell the events of December 27, 2009, as summarized in the police incident reports, and requested "assistance in addressing this public safety concern." Defs.' Ex. U. Thus, the Middletown Defendants are entitled to summary judgment in their favor on the basis of qualified immunity, as well.

### B.    Substantive Due Process

Plaintiffs' substantive due process claims require a showing that the Middletown

Defendants deprived Plaintiffs of a constitutional right under circumstances that were "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *See Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).  Violation of the substantive standards of the Due Process Clause requires "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id.* at 259.

The Court concludes that Plaintiffs have not raised a genuine dispute as to whether the Middletown Defendants' conduct was arbitrary or outrageous.  No conduct on the part of the Middletown Defendants "shocks the conscience" or amounts to a "gross abuse of governmental authority." *See id.*; Ruling at 8-9, ECF No. 157 (DCP Commissioner Farrell's summary suspension of DeVecchis's liquor permit was not "arbitrary, outrageous, or conscience-shocking in the constitutional sense.").

## C.     Equal Protection

It is not obvious to the Court that Plaintiffs' Fifth Amended Complaint claims an equal protection violation.  Count Two's heading reads, in relevant part, "Substantive Due Process 42 U.S.C. § 1983 - Selective Enforcement - Class of One[.]"  Fifth Amend. Compl. at 18.  The statement that follows claims that the defendants "deprived all plaintiffs of property and liberty without substantive due process of law in violation of the Fourteenth Amendment . . . ." *Id.* ¶ 72. Because the parties briefed the purported equal protection claims extensively, and addressed them at oral argument, the Court, in an abundance of caution, will address them as well.

Plaintiffs rely on two related theories for establishing a violation of the Equal Protection Clause.  They assert a so-called "class-of-one" claim, and a selective enforcement claim.  As to both, Plaintiffs claim that the Middletown Defendants subjected DeVecchis and Public to

17

"onerous and costly" conditions in order to have his liquor permit reinstated, while other nightclub establishments, which Plaintiffs claim were similarly situated, were not subjected to such restrictions.  *See* Pls.' Mem. at 28-32; Pls.' Ex. 18.  The conditions included requirements that DeVecchis hire two off-duty, uniformed police officers to provide security at Public on Friday and Saturday nights, install security cameras, and post a sign advising patrons of Public's dress code and video surveillance.  *See id.*

To prevail on a class-of-one claim, Plaintiffs must establish that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Plaintiffs must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves," to provide an inference that they were "intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  The extremely high degree of similarity standard requires Plaintiffs to show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Ruston*, 610 F.3d at 60 (internal quotation marks omitted).

Similarly, to prevail on a claim of selective enforcement, Plaintiffs must establish that (1) they were treated differently from other similarly situated individuals, and (2) the "differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or

punish the exercise of constitutional rights, or malicious or bad faith intent to injure [them]."
*Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation
marks omitted).

Assuming without deciding that the Middletown Defendants were personally involved in
the alleged deprivation, Plaintiffs' class-of-one claim fails because a rational person could regard
Public's circumstances to differ from those of the would-be comparator establishments that
Plaintiffs have identified, and because the Middletown Defendants had a rational basis for
treating Plaintiffs differently.

Plaintiffs submitted an affidavit from Mr. DeVecchis that lists a number of Middletown
bars and nightclubs, attests that incidents of violence occurred at those establishments, and
attests that, apart from Titanium Bar and Lounge ("Titanium"), none were subjected to
conditions similar to those to which DeVecchis agreed.  *See* Pls.' Ex. 18.  Plaintiffs rely on
hearsay in newspaper articles and police reports dating back to 2000 and 2001 to demonstrate the
circumstances of these incidents.  *See generally id.*; *Odom v. Matteo*, 772 F. Supp. 2d 377, 404
(D. Conn. 2011) (noting that "newspaper articles offered for the truth of the matters asserted
therein are inadmissible hearsay that may not be considered by the Court in deciding a motion
for summary judgment" and collecting cases).  Plaintiffs have not produced admissible evidence
of any incidents at the alleged comparator establishments involving overcrowding and fights to
which the entire Middletown Police Department patrol shift responded,[15] nor have they produced
admissible evidence showing the requisite degree of similarity between Public and the alleged

---

[15] Defendants rely on hearsay within a hearsay newspaper article to show that an incident occurred at Titanium to
which the Middletown Police Department's entire patrol shift responded.  *See* Defs.' Ex. PP.  Like DeVecchis,
Titanium allegedly entered into an agreement with the City after this alleged incident which imposed conditions on
its continued operation, including terms requiring the hiring of private duty Middletown police officers, installing an
identification scanner, and equipping security staff with two-way radios.  *See* Defs.' Ex. EE.

comparators with respect to capacity, attendance, and frequency of incidents prompting police response during the relevant time period.

On these bases alone, a rational person could regard Public's circumstances to differ from those of the alleged comparators to a degree that would justify differential treatment on a rational basis – the City's interest in public safety.  *See, e.g.*, *Dean v. Town of Hamden*, --- F. Supp. 3d ---, No. 3:14-cv-00448, 2016 WL 659660, at *5 (D. Conn. Feb. 18, 2016) (granting summary judgment on selective enforcement and class-of-one claims where, *inter alia*, town had rational basis for requiring bar to hire more private duty police officers where complaints were called in to the police and where alleged comparators did not have the same level of alleged criminal activity); *290 Farmington Ave., L.L.C. v. Town of Plainville*, 485 F. Supp. 2d 87, 92 (D. Conn. 2007) (granting summary judgment as to equal protection claims where distinction in maximum capacity and attendance between club and its purported comparators resulted in greater volume of recurring incidents requiring police attention; club was not "*prima facie* identical" to purported comparators); *Cutler v. City of New Haven*, No. 3:11-cv-00662 (WWE), 2013 WL 2358584, at *2-3 (D. Conn. May 29, 2013) (granting summary judgment as to equal protection claims where court lacked information regarding the frequency or types of violence at comparator establishments as compared to plaintiff's establishments, and city defendants had rational public safety reasons for their conduct).

With respect to their selective enforcement claim, Plaintiffs allege that they were treated differently by the Middletown Defendants out of malice and bad faith.  The Second Circuit "rarely ha[s] found" a selective enforcement violation based on malice or bad faith, *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (collecting cases), and this Court does not find such a violation in this case.  Even drawing all reasonable inferences in Plaintiffs' favor, the Court

concludes that Plaintiffs have not, through the introduction of admissible evidence not based on speculation and conclusory statements, raised a genuine dispute of material fact as to whether the Middletown Defendants treated Plaintiffs differently on the basis of malice or bad faith, as opposed to "legitimate governmental objectives." *Id.* at 87.

## V.     CONCLUSION

For the foregoing reasons, the Middletown Defendants are entitled to summary judgment as to Counts One and Two of the Plaintiffs' Fifth Amended Complaint.

Having dismissed all claims arising under federal law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *Marcus v. AT&T Co.,* 138 F.3d 46, 57 (2d Cir. 1998) (district court did not abuse discretion in declining to exercise supplemental jurisdiction over state law claims after dismissing federal claims).

The Middletown Defendants' Motion for Summary Judgment (ECF No. 163) is GRANTED IN PART AND DENIED IN PART.  Sebastian Scalora's Motion for Summary Judgment (ECF No. 159) is FOUND AS MOOT.


SO ORDERED at Bridgeport, Connecticut this thirty-first day of March, 2016.


  /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE